557 A.2d 812

Estate of Irvin G. Engle, Appellant *v.* Commonwealth of Pennsylvania, Department of Revenue, Appellee.

Argued December 15, 1988, before Judges DOYLE, PALLADINO and SMITH, sitting as a panel of three.

*M. Elvin Byler*, with him, *Samuel A. Goodley, Jr.*, for appellant.

*John J. Butchar*, Deputy Attorney General, with him, *LeRoy S. Zimmerman*, Attorney General, for appellee.

OPINION BY JUDGE PALLADINO, April 19, 1989:

The estate of Irvin G. Engle (Appellant) appeals a decision of the Court of Common Pleas of Chester County, Orphans' Court Division (orphans' court), which affirmed a decision of the Department of Revenue that Appellant's inheritance tax return was not in compliance with the requirements of the Inheritance and Estate Tax Act, 72 Pa. C. S. §§1701-1796. We affirm.

Irvin G. Engle died on October 10, 1984. In his will, Engle made pecuniary bequests of $16000 to eight charities. The will directed that the residue of his estate be converted into cash and distributed one-half to eleven charities and one-half to individual beneficiaries who were subject to taxation. The majority of the residue was real property—six tracts of farmland and two other parcels. On the original and a supplemental inheritance tax return[1] (returns), Appellant elected to value the farm-

---

[1] A final account for the estate was filed with the orphans' court in March 1988. It indicates that all distributions have been made

land at less than fair market value as permitted by 72 Pa. C. S. §1722. This valuation is termed a "preferred use value." The six tracts of farmland at the time of Engle's death had a preferred use value of $417,721.80 and a fair market value of $961,380.00. Two other parcels of land, not eligible for section 1722 valuation, had a fair market value of $391,920. The farmland was sold for $842,395.

The estate value reported on the returns reflected the preferred use value of the farmland. The projected amount of cash distributions reflected the actual amount received from the sale of all the property. On the returns, approximately one-half of this projected amount of cash, the amount to be distributed to the charities, was deducted from the estate value. Because the estate value reflected the preferred use value, the estate value reported as subject to inheritance tax was approximately one-fourth of the total estate value rather than the one-half indicated in Engle's will.[2]

The Pennsylvania Department of Revenue (Department) allowed the preferred use value for the farmland's value in valuation of the estate. The Department disallowed almost half of the reduction of the estate value resulting from the projected distribution to charities of the proceeds from the sale of the farmland. The Depart-

---

except for an amount sufficient to cover any additional tax and administrative fees that may be incurred as a result of this appeal. Inheritance tax on the transfer of property is normally imposed on the transferee of property. 72 Pa. C. S. §1744(f). However, the personal representative of an estate is required to either deduct or collect the inheritance tax due and remit it. 72 Pa. C. S. §1746. The transferee need not file an inheritance tax return if the property that was received appears on the return submitted by the personal representative for the estate. 72 Pa. C. S. §1736(a).

[2] Actual numbers will not be used. The fractions are approximate because of the pecuniary gifts to charity, the sale of non-preferred use land, and administrative fees. None are relevant to the issue before us.

ment allowed only a reduction for the distribution to the charities that reflected one-half of the preferred use value of the farmland rather than one-half of the actual amount received for the farmland when sold. This disallowance would result in approximately $20,000 additional inheritance tax being imposed. Appellant appealed the disallowance of the charitable reduction to the orphans' court, which affirmed the Department's determination. Appellant's appeal of the orphans' court's decision is now before us.

The issue presented for resolution in this case is one of first impression. We must determine whether the election of the preferred use value for the valuation of qualifying real property, pursuant to 72 Pa. C. S. §1722,[3] in valuing an estate requires the preferred use value to be used for all inheritance tax purposes, even when the real property is converted to cash prior to transfer.

An inheritance tax is imposed upon transfers of property by will. 72 Pa. C. S. §§1706, 1707. However, there are a number of exceptions to this tax, which are set forth in 72 Pa. C. S. §1711. One of the categories of transfers of property not subject to an inheritance tax includes the transfer of property to a charity. 72 Pa. C. S. §1711(c)(1). Estate property is to be valued as of the date of the transferor's death.[4] 72 Pa. C. S. §1721(a).

The preferred use value of the farmland in the estate was determined as of the date of Engle's death. Appellant concedes that if that real property had been directed by Engle's will to be transferred one-half to charity and

---

[3] Section 1722(b)(1) provides, in pertinent part, that "[t]he value for transfer inheritance tax purposes of land or an interest in land which is owned by a decedent and devoted to agricultural use, agricultural reserve or forest reserve shall be that value which such land has for its particular use. . . ."

[4] There are specific exceptions to this provision, none of which are relied on in this case.

one-half to taxable beneficiaries, the value of the property transferred that is subject to inheritance tax would be one-half of the preferred use value.[5] Appellant contends that the situation in this case is distinguishable because Engle's will directed that the farmland be sold and the cash received from it transferred one-half to charity and one-half to taxable beneficiaries. Appellant argues that because cash was to be transferred to the charities, it was entitled to reduce the value of the estate to be transferred to the taxable beneficiaries by one-half of the amount actually received from the sale of the farmland. However, Appellant would apply this interpretation only to the valuation of the property to be transferred to the charities. Appellant argues that the value of the farmland for determining the value of property to be transferred to the taxable beneficiaries remains at the preferred use value. Appellant asserts that the amount of cash, from the sale of the farmland, to be transferred to the charities is to be *deducted* from the preferred use value to determine the value of the property to be transferred to the taxable beneficiaries and the amount of inheritance tax to be imposed.[6] Appellant's method for arriving at the value of the property to be transferred to the taxable beneficiaries is clearly contrary to the requirements of the Inheritance and Estate Tax Act.

---

[5] "It is conceded that without a sale of the land, claiming a higher value for farmland for purposes of the charitable reduction in the value of the estate would be entirely speculative and unsupportable even with appraisals." Appellant's brief at 11-12.

[6] The Department admits that valuing the farmland at the amount of cash received at its sale is a plausible interpretation of the inheritance tax provisions when a will directs that real property be sold and the cash transferred to beneficiaries. If that interpretation were determined to be the correct one, the Department argues that it also requires the estate value to reflect the cash received for the property for all purposes. We agree.

Transfers of property to charities are not subject to the imposition of an inheritance tax. 72 Pa. C. S. §1711. The value of any such property, therefore, is not included in the value of an estate when determining the value of the property subject to inheritance tax.[7] In this case, Appellant elected to value the farmland pursuant to 72 Pa. C. S. §1722. Inheritance tax is computed upon the "value of the property." 72 Pa. C. S. §1716(b). "Value" is defined in 72 Pa. C. S. §1702 as including the value determined pursuant to section 1722. Valuation of property to be transferred, as previously noted, is to be as of the date of the transferor's death. 72 Pa. C. S. §1721(a). Appellant elected to use the preferred use value permitted by section 1722 for the value of the farmland. Because one-half of the proceeds of the sale of real property in the estate was to be transferred to charities, one-half of the preferred use value of the farmland was properly excluded by the Department from the value of the property to be transferred to the taxable beneficiaries, and the amount of inheritance tax to be imposed was properly computed using an estate value which included one-half of the value of preferred use value of the farmland.[8]

We hold that when an estate elects to value eligible real property at the preferred use value provided by 72

---

[7] Appellant appears to believe that the value of property transferred to a charity is a deduction available to the estate. This is clearly not so. The legislature in 72 Pa. C. S. §1711 provided that transfers of property to charities "are not subject to tax." Therefore the reduction in the estate value is due to an exemption from tax and not from a deduction. Allowable deductions to the value of transferred estate property are set forth in 72 Pa. C. S. §§1726-1730.

[8] Much of Appellant's argument is based on speculation as to what the Department would have done if the farmland had sold for less than the preferred use value or will do if the use of real property entitling it to be preferred use value were abandoned during the seven year recapture period of 72 Pa. C. S. §1722(c). Neither situation exists in this case and this court does not base its decisions on speculation.

Pa. C. S. §1722 and a percentage of that property is involved in a transfer that is not subject to the imposition of inheritance tax, a percentage of the preferred use value equal to that percentage of the property included in the nontaxable transfer is to be excluded from the value of the property transferred to taxable beneficiaries for purposes of computing the inheritance tax to be imposed, regardless of whether the property is converted to cash prior to distribution. Accordingly, the order of the orphans' court is affirmed.

## ORDER

AND NOW, April 19, 1989, the order of the Court of Common Pleas of Chester County, Orphans' Court Division, in the above-captioned case is affirmed.

---

DISSENTING OPINION BY JUDGE DOYLE:

The issue before the Court is not the value of the farmland for inheritance tax purposes. The Department of Revenue has no quarrel with giving the six tracts of farmland special preferential tax treatment to carry out the public policy of this Commonwealth, pronounced in Article 8, Section 2(b)(1) 2 of the Pennsylvania Constitution. That Section allows the General Assembly to "Establish standards . . . for . . . agriculture reserves, and land actively devoted to agricultural use, and make special provisions for the taxation thereof . . ."[1]

What is before the court is the singular issue of placing a value on a residuary bequest of $625,086.08 to

---

[1] The General Assembly has passed legislation to implement this policy. *See* Pennsylvania Farmland and Forest Land Assessment Act of 1974, Act of December 19, 1974, P.L. 973, *as amended,* 72 P.S. §§5490.1-5490.13. We note that if it were not for this provision, special tax treatment would offend the Uniformity Clause of the Constitution, Article 8, Section 1. *Hess v. Montgomery County Board of Assessment Appeals,* 75 Pa. Commonwealth Ct. 69, 461 A.2d 333 (1983).

eleven charities named in the will of Irvin G. Engle. The Department argues that the value of this bequest should be, not $625,086.08, but $341,756.98, a position which is directly contrary to the Inheritance and Estate Tax Act[2] (Act). Section 1711 of the Act[3] establishes that transfers (by will) of property to charitable institutions are exempt from inheritance tax. The Act, in its definitional section, further provides that the "value" of that property shall be "The price at which the property would be sold by a willing seller, not compelled to sell, to a willing buyer, not compelled to buy, both of whom have reasonable knowledge of the relevant facts." 72 Pa. C. S. §1702. Would any reasonable person sell $625,086.08 cash for anything less than $625,086.08? As simplistic as that question may seem, the Department would have us answer in the affirmative in direct contravention of another public policy of our Commonwealth, that is, to encourage private contributions to charitable institutions.

The Department's argument is centered on the other portion of the definition of "value" which states, "Value as to land in agricultural use . . . means the value which the land has for its particular use according to the standards provided in Section 1722 (relating to [preferred use value])." However, we are not considering a devise of real estate, but rather a gift of one-half of Irvin Engle's residuary estate in the form of a cash bequest.

Underlying the Department's argument seems to be the unspoken claim that it is not "fair" to value the "property" as an asset in the form of real estate on the date of death—and thus afford preferential tax treatment in accord with the public policy of our state—and then, on the other hand, value the "property" at full face value in the form of cash that is given to several charitable institu-

---

[2] 72 Pa. C. S. §§1701-1796.
[3] 72 Pa. C. S. §1711.

tions for the purposes of advancing another public policy of the Commonwealth. My response to this unarticulated argument of "unfairness" is tripartite. First, there is nothing wrong with advancing *both* public policies of our Commonwealth and providing double tax benefits (like double "coupons" at the supermarket) if that is what the General Assembly has statutorily provided. Second, the end result will be a larger residuary estate (because fewer tax dollars will be paid) which will enure to the benefit of the eleven charities; it is inconsequential that the noncharitable heirs will also benefit (that does not make them uncharitable). Third, to apply the divining rod of "fairness" to the statutory interpretation of a tax statute is a divination likely to produce some rather inauspicious results. Accordingly, I dissent.